THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KELVIN WILDER, Defendant-Appellant.

First District (1st Division)    No. 80-915

Opinion filed July 13, 1981.

Giovannini & Goldberg, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Richard T. Burke, and Lawrence T. Krulewich, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

On March 16, 1978, at approximately 9 a.m. the defendant, Kelvin Wilder, was arrested while carrying a grocery bag containing heroin. He was charged with possession of a controlled substance and possession of a controlled substance with intent to deliver. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1402(a), 1401(a).) The defendant filed a motion to suppress the physical evidence, which was denied, and defendant then proceeded to a bench trial. At the trial it was stipulated that the testimony of Officers Boyle and Aabreu would be the same as it was at the hearing on the motion to suppress. After trial the defendant was found not guilty of possession with intent to deliver, and guilty of possession of less than 30 grams of heroin (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)), and sentenced to two years' imprisonment. On appeal defendant contends that the trial court deprived him of a full and complete hearing on his motion to suppress the physical evidence.

For the reasons hereinafter set forth, the judgment of the circuit court is affirmed.

At the hearing on the motion to suppress, the defendant testified that on March 16, 1978, at approximately 9 a.m., he was walking east on 24th Street just west of Pulaski Avenue carrying a paper bag. Two police officers in an unmarked car pulled in front of him and exited their vehicle with guns drawn. One of the officers told him to "halt." One of the officers also snatched the bag out of his hand, looked in the bag, pulled

out a loaf of bread and two plastic containers which contained heroin, and then placed defendant under arrest.

Officer Richard Boyle of the Chicago Police Department testified that on March 16, 1978, at approximately 8 a.m., he had a telephone conversation with an individual known to him, who said there was going to be a delivery of an ounce or more of heroin at approximately 9 a.m. at 24th and Pulaski. The informer said that the man who was going to make the delivery was a black male, named Kelvin Wilder. Wilder was described as approximately 21 years old, weighing 225 pounds. The informer said Wilder would be wearing blue jeans, a tan or brown jacket, and a cap. Officer Boyle testified further that this informer had given him information on six occasions between August 1977 and March 1978, which had led to arrests and the recovery of narcotics. On five of those occasions heroin was recovered, and on the sixth occasion phencyclidine was recovered. Convictions were obtained in at least three of those instances, and one case was still pending. Officer Boyle had spoken to the informer within a week of March 16, 1978, and he had recovered narcotics as a result of one of the informer's tips within a month of that date.

After speaking to the informer, Officer Boyle, along with other officers, proceeded to the vicinity of 24th and Pulaski. They arrived in the area at approximately 8:30 a.m. Officer Boyle saw a man whom he identified in court as the defendant, walking north on Karlov toward 24th Street carrying a grocery bag. A loaf of bread appeared to be sticking out of the bag. The man was wearing blue jeans, a waist length brown leather jacket, and a brown or tan cap. He appeared to be approximately six feet, or six feet one inch tall, and to weigh about 225 pounds. Officer Boyle watched the defendant approach the corner of Karlov and 24th Street, and then walk east on 24th Street. Boyle pulled his squad car to the sidewalk, exited the vehicle, identified himself as a police officer, and asked the defendant what he had in the bag. The defendant appeared frightened and nervous, and dropped the bag. When the bag hit the ground, the loaf of bread and a clear plastic bag containing numerous foil packets fell out. Officer Boyle then placed the defendant under arrest. Officer Boyle testified that he had made over a hundred arrests for possession of heroin prior to March 16, 1978, and that almost every time it was to be delivered at "street level" it was packaged in the aforementioned manner.

## I

In urging that he was denied a full and complete hearing on his motion to suppress, the defendant argues that the only evidence introduced at the hearing to establish probable cause for his arrest and search was information allegedly supplied to the arresting officer by an undis-

closed police informer. He contends that while a warrantless arrest of a person may be based upon the information supplied by a police informer, the informer must be shown to the court to be of proven reliability, as well as to have had a basis for his conclusions that the defendant is engaged in criminal activity. Defendant cites *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, in support of this argument urging that the proof in the instant case does not satisfy the first prong of the two-prong test set forth in *Aguilar*, that being the proven reliability of the undisclosed informant.

The State argues that the testimony of Officer Boyle was sufficient to establish the proven reliability of the informer, and that furthermore, Officer Boyle independently corroborated the information provided by the informer. The State relies on the testimony of Officer Boyle that the informer, who was known to him, had provided information to him a number of times in the past which had on each occasion led to the recovery of narcotics, and on his testimony that at least three convictions had resulted from the six prior arrests with one case still pending. The State also relies on the testimony of Officer Boyle that in pursuing the information supplied to him by the informer, he observed a man fitting the physical description given to him, wearing the clothing described to him, at the time and in the place indicated. The State urges that the facts in the instant matter parallel those in *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329. In *Draper*, an experienced narcotics agent was told by an undisclosed informer whose information he had found to be reliable in the past, that Draper was selling narcotics, had gone to Chicago to obtain narcotics, and would return to Denver on a certain train on a certain day or the day after, wearing clothing described by the informer, carrying a zipper bag described by the informer, and walking in a particular manner. When the agent met the train the first day, he saw no one meeting the description he had been given; however, when he met the train the following day, Draper got off the train matching in every way the description he had been given. Draper was arrested and searched without a warrant, and the narcotics on his person was seized. In upholding his conviction for violating a Federal narcotics law, the United States Supreme Court held that when in pursuing the information supplied by the informer, the agent saw a person matching the description in every way, the agent had personally verified every facet of the information given him except whether Draper had heroin on his person, and thus the agent had reasonable grounds to believe the remaining bit of unverified information was also true.

The record in the instant case indicates that the trial court agreed with the defendant that the two-prong test of *Aguilar* had not been met, in that the trial court found that the reliability of the informant had been

shown by the State, but that the underlying circumstances relied on by the informant from which he concluded that defendant was engaged in criminal activity had not been shown. The court did find, however, that the independent corroboration by the arresting officer was sufficient to provide the arresting officer with reasonable grounds to believe that he had probable cause to arrest the defendant.

■■ ■ It is well established that a police officer may make an arrest without a warrant if there is probable cause to arrest. Probable cause to arrest exists where the arresting officer has reasonable grounds to believe that an offense has been or is being committed and the accused committed or is in the process of committing that offense. "Reasonable grounds for believing that a person has committed a criminal offense may be found in information furnished by an informer if the reliability of the informer has been previously established or independently corroborated." (*People v. Durr* (1963), 28 Ill. 2d 308, 311, 192 N.E.2d 379; see *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Wilson* (1970), 45 Ill. 2d 581, 262 N.E.2d 441; *People v. McClellan* (1966), 34 Ill. 2d 572, 218 N.E.2d 97; *People v. Andreat* (1979), 76 Ill. App. 3d 948, 395 N.E.2d 728.) The testimony of Officer Boyle, if believed by the trial court, was sufficient to establish the reliability of the informer, and the independent corroboration by Boyle of the information given to him by the informer; therefore, we agree with the State that the proof established that the search of the defendant and the seizure of the heroin were incident to a lawful arrest.

## II

The defendant next contends that he was denied a full and complete hearing on his motion to suppress when the trial court refused to allow him to inquire of the arresting officer the names of persons allegedly arrested in the past based upon information supplied by the informer. The defendant relies on *McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056, and *People v. Williams* (1973), 16 Ill. App. 3d 440, 306 N.E.2d 678, in support of his position. Defendant claims that *McCray* stands for the proposition that the names of persons who have been convicted of narcotics violations on the basis of information supplied by an undisclosed informer must be disclosed to the defendant on cross-examination to test the credibility of the arresting officer. The State argues that *McCray* does not stand for this proposition in that disclosure of the names of other defendants arrested as a result of tips from the informant was not an issue because this line of questioning was not objected to by the State, and hence, the court did not pass on this issue. We have examined the *McCray* case and agree with the State that said case does not support the contention of defendant.

Defendant also claims that *People v. Williams* is factually similar to the case at bar, and that the denial of defendant's motion to suppress was reversed in *Williams* because of the arresting officer's inability to answer questions pertaining to the names, dates and other circumstances concerning the arrest, prosecution, and conviction of other defendants allegedly resulting from information provided by his informer. The State urges that *Williams* can be distinguished from the instant case because in *Williams* the reliability of the informer, and even his existence, was not clearly established in light of contradictions within the arresting officer's in-court testimony, inconsistencies which existed between his in-court testimony and his handwritten police report, and the arresting officer's inability to remember any of the names of defendants arrested as a result of other tips received from the informer. Moreover, the corroborating evidence was weakened by the fact that the defendant arrived at the tavern where she was arrested a full three hours after the time at which the informer had indicated that she would arrive. In the instant case, the testimony of Officer Boyle did not appear to be inconsistent or uncertain, and the corroborating evidence was not weakened by testimony accompanied by contradictions and uncertainty as in *Williams*. We agree that the *Williams* decision is clearly distinguishable on its facts, and the holding does not support the position urged by the defendant.

■■ From the record herein it appears that Officer Boyle was a credible witness and that his testimony in open court tended to substantiate the reliability of the informer. Furthermore, Officer Boyle's corroborating testimony was sufficient to establish that he had independently corroborated each and every detail of the informer's tip with respect to the name of the defendant. Additionally, it appears that Officer Boyle did not testify to the names of other defendants arrested as a result of tips from his informer because the trial court sustained the State's objection to the disclosure of this information to protect the identity of the informer. Under the circumstances it does not appear that the trial court abused its discretion when it sustained the objection. *People v. Freeman* (1966), 34 Ill. 2d 362, 215 N.E.2d 206; *People v. Nettles* (1966), 34 Ill. 2d 52, 213 N.E.2d 536.

### III

Finally, the defendant contends that he was deprived of a full and complete hearing on his motion to suppress when the trial court conducted an in camera examination of the arresting officer's file on the informer out of the presence of the defendant and his counsel, thereby precluding cross-examination of the officer on the contents of the file.

■■ Officer Boyle testified that his informer's file consisted of one handwritten page and contained the name of the informer. The State

32

urges that disclosure of the file would in effect disclose the identity of the informer. In ruling that the decision to disclose the informer's identity involved a balancing of interests between the public interest in protecting the flow of information to the government and the individual's right to prepare a defense, the court ordered the production of the informer's file for an in camera examination to determine whether the identity of the informer should be disclosed. The propriety of such an examination is supported by the holdings in *McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056, *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, and *United States v. Anderson* (9th Cir. 1975), 509 F.2d 724. The record does not disclose an abuse of discretion by the trial court. Moreover, the record indicates that at no time during the hearing on the motion to suppress, did the defendant object to the in camera inspection of the file, or request its production for his inspection or use during cross-examination of the arresting officer. The law is well-settled in Illinois that failure of the accused to make timely objections to an alleged irregularity may be deemed a waiver of the objection. (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739; *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817; *In re Lamb* (1974), 21 Ill. App. 3d 827, 316 N.E.2d 42, *aff'd* (1975), 61 Ill. 2d 383, 336 N.E.2d 753, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672.) The defendant has therefore waived this issue on appeal.

For the reasons stated the judgment of the circuit court is affirmed.

Affirmed.

GOLDBERG and McGLOON, JJ., concur.